IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHAUNNEYISHA JACKSON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:21-cv-442-RAH |
| ) | [WO] |
| ONIN STAFFING, LLC, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I.  INTRODUCTION**

Plaintiffs Chaunneyisha Jackson and Keyonia Davidson bring this employment discrimination suit against their former employer, Onin Staffing, LLC (Onin), alleging violations of the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) (EPA); and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII).  Davidson also brings a state law breach-of-contract claim.

Pending is Onin's motion for summary judgment, as well as motions to strike filed by Onin and the Plaintiffs.  After reviewing the parties' submissions, the Court concludes that Onin's summary judgment motion is due to be granted in part and denied in part and the motions to strike denied.

1

## II. JURISDICTION AND VENUE

Original subject matter jurisdiction exists over the EPA and Title VII claims under 28 U.S.C. § 1331, and supplemental jurisdiction exists over Davidson's state law breach-of-contract claim under 28 U.S.C. § 1367(a). Personal jurisdiction and venue are uncontested, and venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The legal elements of a claim determine which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is not material if a dispute over that fact would not affect the outcome of the case under the governing law. *Id.*

A court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242–43 (11th Cir. 2001). The nonmovant must produce sufficient evidence to enable a jury to rule in

his favor; a mere scintilla of evidence in support of a position is insufficient. *Id.* at 1243.

## IV.  BACKGROUND

The facts, stated in the light most favorable to the nonmovants, are as follows:

Onin is a staffing company that places temporary employees with employers throughout the country, including Hyundai Motor Manufacturing Alabama, LLC's (Hyundai) automobile manufacturing facility located in Montgomery, Alabama. Jackson and Davidson were formerly employed with Onin and assigned to Hyundai's Montgomery plant.

Onin hired Jackson on October 18, 2018, as the *second*-shift On-Site Representative at the Montgomery plant.  (Doc. 25-1 at 7–8; Doc. 25-3 at 3.) Davidson was hired as the *third*-shift On-Site Representative on April 29, 2019. (Doc. 25-3 at 3.)  As On-Site Representatives, Jackson and Davidson served as liaisons between Onin and Hyundai management, coached employees, undertook investigations, disciplined Onin employees, and entered payroll information on a weekly basis.  (Doc. 25-1 at 15–16; Doc. 25-2 at 11.)

Jackson earned $16.50 per hour while working for Onin, and Davidson earned $16.00 per hour.  (Doc. 25-1 at 13; Doc. 25-2 at 10; Doc. 25-3 at 3.)  Then-Regional Operations Manager Donna Smith allegedly told Davidson she would earn $16.50

3

per hour following her initial 90-day probationary period, (Doc. 25-2 at 10), but her hourly wage never reached that level, (Doc. 25-3 at 3).

On April 22, 2019, Onin hired Joel Galloway as the *first*-shift On-Site Representative at the Montgomery plant. Galloway replaced Peaches Wagner, an African-American woman, who was earning $18.50 per hour at the time of her separation. (Doc. 25-3 at 4–5.) According to Onin, the *first*-shift On-Site Representative position paid more because of the additional duties attendant to that particular shift, including higher payroll responsibilities, higher management load, and more extensive work maintaining relationships with Hyundai management. (*Id.*)

When first approached, Galloway was offered $18.00 per hour for the Onin position based on his past management and customer service experience and the duties attendant to working the *first*-shift position, but he rejected the offer because he was already earning $18.00 per hour at his current job with ASE Credit Union. (*Id.*) Onin then increased the offer to $18.50 per hour, a sum consistent with what Peaches Wagner had earned. (*Id.* at 5.) This time, Galloway accepted the offer and began working for Onin as the *first*-shift On-Site Representative.

A little over two months later, Onin created a new position called the Lead On-Site Representative. (*Id.* at 6.) This position was tasked with managing the other On-Site Representatives and had greater responsibility for fostering relationships

4

between Onin and Hyundai management. (*Id.*) Onin promoted Galloway to this position because of his positive job performance and prior work experience. (*Id.*)

Davidson frequently asked personnel at Onin about increasing her pay and how her pay compared to that of Galloway. (Doc. 25-2 at 23.) She complained about these issues through April 2020. (*Id.*)

Following a series of disciplinary actions (the validity of which are disputed), Jackson's employment with Onin was terminated on January 28, 2020. (Doc. 25-1 at 22; Doc. 25-3 at 7.) Davidson was not terminated but instead was laid off along with Cortrell Mandosia, another On-Site Representative, on April 24, 2020, due to decreased production at the Hyundai plant during the COVID-19 pandemic. (Doc. 25-2 at 14; Doc. 25-3 at 7–8.) According to Onin, Galloway kept his position because Hyundai continued to maintain some operations, thereby requiring Onin to maintain an on-site, albeit reduced, presence. (Doc. 25-3 at 8.)

Within a week of her lay off, Onin posted Davidson's position as open for hiring on *Indeed.com*, a web-based job posting portal. (Doc. 25-2 at 23–24.) Upon seeing it, Davidson called Branch Manager Barbara Martinez and asked about the posting. (*Id.*) Martinez responded that the posting was a mistake and was to be removed. According to Davidson, despite Martinez's claim of a mistake, the position was filled within a couple of weeks. (*Id.* at 24.)

Davidson filed an EEOC charge of discrimination on April 28, 2020, (Doc. 25-2 at 45), and Jackson filed hers on August 17, 2020, (Doc. 25-1 at 43–44). Right-to-sue letters were sent to Davidson on November 5, 2020, and to Jackson on September 8, 2020. (Doc. 1-1 at 8–9.) This suit followed.

## V.  DISCUSSION

Onin seeks summary judgment on each of Jackson's and Davidson's claims: (1) failure to promote in violation of Title VII, (2) retaliation in violation of Title VII, (3) violations of the EPA, and (4) breach of contract.  In their summary judgment response, Jackson and Davidson expressly abandon their failure-to-promote claims in Count I.  Furthermore, they fail to respond to Onin's arguments concerning Jackson's retaliation claim in Count II and Davidson's breach of contract claim in Count IV.  Accordingly, these claims are deemed conceded, if not abandoned.  *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").  Summary judgment is thus due to be granted in Onin's favor on these claims, thereby leaving for consideration Davidson's retaliation claim in Count II and Jackson's and Davidson's EPA claims in Count III.

### A. Retaliation

Davidson alleges that she was laid off in retaliation for complaining to Onin management about receiving a lower hourly pay rate than Galloway (a male), an On-

Site Supervisor like herself.  Onin asserts that Davidson has failed to exhaust her administrative remedies as to her retaliation claim, and in the alternative, that Davidson cannot show pretext for Onin's decision to end her employment as part of a series of layoffs related to the COVID-19 pandemic.  Davidson responds by asserting that she gave sufficient notice of her retaliation claim in her correspondence with the EEOC.  She also noted in her deposition testimony that, contrary to Onin's claimed need to lay-off employees due to the COVID-19 pandemic, Onin actually posted the position as open for hiring and filled it shortly after her separation, which would evidence pretext.

Before filing a Title VII suit in federal court, an employee must first file a charge of discrimination with the EEOC "within 180 days 'after the alleged unlawful employment practice occurred.'"  *See Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1160, 1178 (11th Cir. 2005) (citation omitted).  There are two purposes for the exhaustion requirement under Title VII.  One is to notify the defendant of the allegations, *see Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1319 (11th Cir. 2001), and the other is to give the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts," *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).  While the scope of an EEOC charge should be liberally construed, the proper inquiry for determining whether a claim has been

7

exhausted is whether the claims in a judicial complaint are like, related to, or grow out of the allegations contained in the EEOC charge, not merely whether the correct boxes in the charge were checked. *Gregory*, 355 F.3d at 1280 (finding that a claim of *retaliation* based on race and sex discrimination was inextricably intertwined with the EEOC charge alleging race and sex discrimination).

Contrary to Onin's assertion otherwise, Davidson sufficiently exhausted her administrative remedies as to her retaliation claim. It is true that she did not check the box for retaliation in her initial EEOC charge. Her charge states, however, that she had complained to management, and she mentioned in her reply to Onin's response before the EEOC that she was concerned about her pay disparity with Galloway. Granted, these statements in her EEOC charge and related communications do not directly assert retaliatory conduct, but they do reference Davidson's protected conduct. She also noted in her correspondence with the EEOC that she had been terminated on April 24, which she marked on her charge as the last day she suffered adverse conduct by Onin—thereby putting Onin on sufficient notice that she was also complaining about her termination. Since Davidson's retaliation claim relates to or grows out of her pay discrimination claim and references her termination, her claims before the EEOC "could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of . . . sex discrimination." *See Gregory*, 355 F.3d at 1280; *see also*

*Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (holding that a plaintiff exhausted her administrative remedies for her claim of retaliation, even though she did not check the retaliation box on her EEOC charge, when her retaliation claim grew out of her disability accommodations claim in her EEOC charge and her adverse employment action—termination—was mentioned in the charge). Davidson has sufficiently exhausted her administrative remedies concerning this claim and therefore Onin is not entitled to summary judgment on this basis.[1]

Now on to the merits of Davidson's retaliation claim, which Onin also attacks via its summary judgment motion. Title VII makes it unlawful for employers to retaliate against employees who oppose unlawful discriminatory conduct. *See* 42 U.S.C. § 2000e-3(a). In the absence of direct evidence of discrimination, which is the case here, the familiar *McDonnell Douglas* burden-shifting framework is applied when analyzing retaliation claims. *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). "To make a prima facie case for a claim of retaliation under Title VII, a

---

[1] Onin moves to strike Davidson's EEOC correspondence from the record, arguing that Davidson failed to disclose this evidence during discovery in violation of Fed. R. Civ. P. 26(a)(1)(A) and (e)(1)(A). (Doc. 32 at 1–4.) Onin's motion will be denied. While the Court certainly does not condone springing evidence onto an opposing party at the dispositive motion stage, in this case, Onin could have obtained this material directly from the EEOC, and furthermore, it does not appear that Onin directly asked Davidson for this material in its requests for production. (*See id.* at 3.) While Plaintiffs should have produced this correspondence to Onin during discovery, their failure to do so under the circumstances presented here is not sanctionable conduct and does not unfairly prejudice Onin. Moreover, even if the Court struck the EEOC correspondence, the Court's conclusion regarding exhaustion would remain the same.

9

plaintiff must first show (1) that 'she engaged in statutorily protected activity,' (2) that 'she suffered an adverse action,' and (3) 'that the adverse action was causally related to the protected activity.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (citation omitted).  Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate a legitimate reason for the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).  If the defendant does so, the plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the defendant's proffered reasons is pretextual. *Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc).

Onin does not sufficiently challenge at this stage Davidson's ability to make a *prima facie* case of retaliation, although it does generally dispute the issue.  Onin fails to present any cogent argument as to why it believes Davidson cannot establish a *prima facie* case, and only raises its position that Davidson cannot make out a causation argument in a passing, conclusory, single-sentence footnote. (*See* Doc. 24 at 20 & n.6.)  Onin does not even place temporal proximity at issue, which is a common means of challenging the existence of causation in a retaliation claim. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  The Court is not obligated to formulate the parties' arguments on a motion for summary judgment and will not formulate arguments on behalf of Onin's position here. *See*

*Resol. Tr. Corp.*, 43 F.3d at 599. The Court therefore will not entertain the issue any further and will move to the analysis of whether Onin's stated reason for Davidson's layoff was pretextual.

Onin asserts that it had a legitimate reason for Davidson's layoff—the Hyundai plant was reducing its workforce in response to the COVID-19 pandemic and Onin needed only one On-Site Supervisor. That is a legitimate reason to terminate one's employment, and therefore Davidson now bears the burden of showing that Onin's stated reason is merely a pretext for illegal retaliation.

To establish pretext at summary judgment, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [employer's] proffered legitimate reasons for [the adverse] action that a reasonable factfinder could find them unworthy of credence." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1298 (11th Cir. 2021) (first alteration in original) (citation omitted). "A reason is not pretext for retaliation unless it is shown both that the reason was false, and that retaliation was the real reason." *Id.* The plaintiff must come forward with evidence, which can include the previously produced evidence establishing the *prima facie* case, that is sufficient to permit a reasonable factfinder to conclude that the reasons given by the defendant were not the real reasons for the adverse employment action. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

11

As to pretext,[2] Davidson has provided evidence demonstrating that Onin posted Davidson's former position for hiring on *Indeed.com* within days of Davidson's separation and that Onin quickly filled this position, thereby undermining Onin's assertion that Davidson was let go merely for financial reasons attributable to COVID-19. Onin claims the position was not filled, that the posting was an innocent mistake, and that it was immediately taken down after Davidson questioned Onin about it. Davidson additionally notes that she complained about her pay and that of Galloway until April 2020, thereby showing a close temporal connection between her complaints and her layoff on April 24, 2020. *See Thomas*, 506 F.3d at 1364 ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action."). Based on this evidence, there is a genuine dispute of material fact as to whether Onin's proffered reason for Davidson's layoff was a pretext for retaliation.

For summary judgment purposes, Davidson has sufficiently rebutted Onin's assertion that Davidson was laid off for merely economic reasons. Simply put, these are factual issues a jury will have to resolve. Onin's assertion that, in addition to

---

[2] Although Davidson does not expressly make a pretext argument or use the word pretext in her response brief, the substance of her argument includes a pretext argument because, when arguing that she has established a *prima facie* case of retaliation, she discussed Onin's proffered reason for her layoff as well as the evidence calling into question the truthfulness of that reason. (*See* Doc. 30 at 9–10.)

Davidson, it also laid off a male On-Site Supervisor (Mandosia) who did not engage in protected conduct, is a fact that the jury can consider, but it is not a dispositive fact that entitles it to summary judgment. Onin has not shown its entitlement to summary judgment on Davidson's retaliation claim.

### B. Equal Pay Act Claims

Jackson and Davidson, as female On-Site Representatives, claim that their comparator, Galloway, a male On-Site Representative, was paid a higher hourly wage for substantially similar work and therefore that Onin has violated the EPA. Onin acknowledges that Galloway was paid more on an hourly basis, but claims that Galloway was paid more, as was his female predecessor, because the *first*-shift On-Site Representative had greater work responsibilities than those persons who worked the second and third shifts, Galloway had more management and customer service experience from his previous employment, and Galloway had negotiated a higher hourly rate in order to leave his previous employer and move to Onin.[3]

---

[3] As an initial matter, Onin moves to exclude as inadmissible hearsay Davidson's testimony as to the similarity of Galloway's job responsibilities. (Doc. 32 at 4–5.) But so long as Davidson can substantiate this claim with admissible evidence at trial, which she can, this claim would indeed raise a question of fact for the jury. *See McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (explaining that evidence may be submitted in inadmissible form at the summary judgment stage so long as it can be submitted in admissible form at trial), *aff'd sub nom. McMillian v. Monroe Cnty.*, 520 U.S. 781 (1997).

Onin also seeks to exclude its EEOC position statement filed in response to Davidson's EEOC charge. (Doc. 32 at 5–6.) The Court will deny this motion as moot, as the Court did not rely upon any portion of this position statement in reaching its decision, nor would the position statement, if relied upon, change the Court's conclusion.

The EPA prohibits employers from discriminating on the basis of sex by paying employees of different sexes different rates for the same work. 29 U.S.C. § 206(d)(1). To establish a *prima facie* case of discrimination under this statute, a plaintiff must show that her employer "pays different wages to employees of opposite sexes 'for equal work on jobs . . . [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (alterations in original) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). The initial burden to demonstrate comparability is "fairly strict," and although the jobs compared need not be identical, a plaintiff must demonstrate "that she performed substantially similar work for less pay." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992); *see also Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989) (per curiam) ("The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high."). The primary focus is on the duties of each job, not on the individual employees holding those jobs. *See Miranda*, 975 F.2d at 1533 (explaining that "the controlling factor under the Equal Pay Act is job content" (citation omitted)); *see also Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998) ("[T]he controlling factor in the court's assessment of whether two jobs are substantially equal must be actual job content."). Because a *prima facie* case does not require a showing of an employer's

14

discriminatory intent, the EPA "prescribes a form of strict liability." *Miranda*, 975 F.2d at 1533.

As for their *prima facie* case, Jackson and Davidson argue that Galloway worked a substantially similar job as them (On-Site Representative). They also argue that each engaged in the same basic management tasks, including coaching, training, disciplinary actions, and payroll, and that they each interfaced with Hyundai management.

Onin argues that there was a key distinction between Galloway and the others—since Galloway worked the *first*-shift as the On-Site Representative, he had a higher volume of work because he had additional staff working underneath him and had more responsibility to build and foster a relationship with Hyundai management. Onin also asserts that Galloway was tasked with entering payroll data more frequently than *second* and *third*-shift On-Site Representatives. And most importantly, Onin points out that Galloway's predecessor as the *first*-shift On-Site Representative was a female who also was paid $18.50 per hour.

Jackson and Davidson have presented sufficient evidence to establish a *prima facie* EPA violation despite Onin's protestations and rebuttal points otherwise. While the burden on Jackson and Davidson at the *prima facie* stage is indeed fairly strict, the focus is "solely on the primary duties of each job, not duties that are incidental or insubstantial." *See Arrington*, 139 F.3d at 876 (citation omitted).

Construing the evidence and all reasonable inferences in the Plaintiffs' favor, their primary job duties were substantially similar to those of Galloway and Galloway's additional duties, such as managing a higher volume of staff, were merely incidental. And as to Onin's point that Galloway's predecessor was female,[4] this fact is devoid of important context because it gives no detail as to the female predecessor's job responsibilities, length of employment, past work experience, or her negotiated compensation terms, all of which are facts, according to Onin, demonstrative of the pay disparity between Galloway, Jackson, and Davidson.[5]

But that is not the end of the matter, because where a plaintiff makes a *prima facie* showing under the EPA, a defendant "may avoid liability by proving by a preponderance of the evidence that the pay differences are based on . . . 'any other factor other than sex.'" *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir.

---

[4] Jackson and Davidson attempt to cite Peaches Wagner's LinkedIn profile (Doc. 31-5) to support their claim that Wagner's job title of On-Site Manager means that she and Galloway did not have the same role. Onin moves to strike this evidence. (Doc. 32 at 3.) This motion is due to be denied as moot because it does not factor into, nor does it change the outcome of, Onin's summary judgment motion.

Jackson and Davidson also move to strike documents and statements regarding Wagner's pay and position, arguing that Wagner was not timely disclosed as a person who may have discoverable information relevant to the facts of this case. (Doc. 34 at 4–5.) This motion is due to be denied for the same reasons that Onin's motion is denied.

[5] Jackson and Davidson argue that any claim based upon Sundra Kinman's declaration (Doc. 25-3), such as Galloway's job responsibilities, is rooted in impermissible hearsay and accordingly should be stricken. (Doc. 30 at 16–17.) So long as this information can be presented in an admissible form at trial—and it can—it will not be stricken. *See McMillian*, 88 F.3d at 1584.

2003) (quoting 29 U.S.C. § 206(d)(1)). The defendant's burden of proving this affirmative defense is "heavy," in the sense that the defendant "must demonstrate that the factor of sex provided *no basis* for the wage differential." *Id.* (citations omitted). The Eleventh Circuit has found factors "other than sex" justifying pay differentials to include "unique characteristics of the same job; . . . an individual's experience, training, or ability; or . . . special exigent circumstances connected with the business." *Irby*, 44 F.3d at 955 (alterations in original) (quoting *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988)). "So long as subjective business justifications . . . are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered." *Schwartz v. Fla. Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991) (per curiam).

Onin argues that because Galloway was being paid $18 per hour in his position with his previous employer and demanded more money in order to leave that position, Onin naturally had to pay him a higher hourly wage to lure him to Onin. Onin also asserts that Galloway's past employment experience interacting with others, managing employees, and providing customer service enhanced his qualifications to serve as an On-Site Representative and therefore justified a higher starting wage.

"[P]rior pay plus experience establishes an affirmative defense under the EPA." *White v. ThyssenKrupp Steel USA, LLC*, 743 F. Supp. 2d 1340, 1354 (S.D.

17

Ala. 2010); *see also Irby*, 44 F.3d at 955 ("While an employer may not overcome the burden of proof on the affirmative defense of relying on 'any other factor other than sex' by resting on prior pay alone, . . . there is no prohibition on utilizing prior pay as part of a mixed-motive, such as prior pay *and* more experience.").[6] The Court is satisfied that Onin has met it burden on this prong of the analysis, and therefore Jackson and Davidson "must rebut this explanation by showing with affirmative evidence that the stated reason is pretextual or offered as a post-event justification for a gender-based differential." *See Steger*, 318 F.3d at 1078 (quoting *Irby*, 44 F.3d at 954). If they can, a material issue of fact exists that must be resolved at trial. *Irby*, 44 F.3d at 954.

Jackson and Davidson have failed to show that Onin's asserted rationale for the pay discrepancy is pretextual. In responding to Onin's argument that Galloway's past employment experience and pay demand justified their pay discrepancy, Jackson and Davidson simply recite without analysis their own respective job and educational history as compared to that of Galloway in an attempt to argue that their respective experience was not terribly distinct. These assertions are insufficient to meet their burden at this stage, especially when Jackson and Davidson do not

---

[6] Onin also asserts that because being an On-Site Representative for the first shift required more experience and because Galloway had more experience coming into the role, his higher pay was justified. Because a material dispute exists over the difference in workload between the *first* shift and the *second* and *third* shifts, this Court will not rest its conclusion on this ground.

factually attack Galloway's prior experience or his wage demands. And it is not this Court's obligation to scour the record and develop arguments that Jackson and Davidson fail to make. *See Resol. Tr. Corp.*, 43 F.3d at 599. Jackson and Davidson's failure to sufficiently rebut Onin's basis for the pay discrepancy is fatal to their EPA claims. Onin is therefore entitled to summary judgment on the EPA claims.

## VI. CONCLUSION

Accordingly, it is hereby ORDERED as follows:

(1) Defendant Onin Staffing LLC's Motion for Summary Judgment (Doc. 23) is GRANTED in part and DENIED in part. It is DENIED as to Plaintiff Keyonia Davidson's Title VII retaliation claim as set forth in Count II. The motion is GRANTED in all other respects.

(2) Defendant Onin Staffing LLC's Motion to Strike (Doc. 32) is DENIED.

(3) Plaintiffs' Motion to Strike (Doc. 34) is DENIED.

(4) Plaintiff Chaunneyisha Jackson is DISMISSED from this action. Plaintiff Keyonia Davidson's Title VII retaliation claim in Count II will be set for trial.

DONE, on this the 17th day of April, 2023.

/s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE